```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

|  |  |
|---|---|
| GREGORY WALDON, et al., | : |
| Plaintiffs, | : NO: 1:12-CV-00677 |
| v. | : |
|  | : **OPINION AND ORDER** |
| CINCINNATI PUBLIC SCHOOLS, | : |
| Defendant. | : |

This matter is before the Court on Defendant Cincinnati Public Schools' Motion to Dismiss (doc. 6), Plaintiffs' Response in Opposition (doc. 7), and Defendants' Reply (doc. 8). For the reasons indicated herein, the Court DENIES Defendant's motion.

**I. Background**

The state of Ohio enacted legislation, H.B. 190, effective November 14, 2007, which amended Ohio law to require criminal background checks of current school employees, even those whose duties did not involve the care, custody, or control of children (doc. 1). If an employee had been convicted of any of a number of specified crimes, no matter how far in the past they occurred, nor how little they related to the employee's present qualifications, the legislation required the employee to be terminated (Id.).

Plaintiffs Gregory Waldon and Eartha Britton both worked for many years and provided Defendant Cincinnati Public Schools with excellent service (Id.). In late 2008, Defendant discharged

Plaintiffs pursuant to the new law, based on criminal matters that were decades old (Id.).[1] Both Plaintiffs are African-American (Id.). At the time of Plaintiffs' discharge there was no exception allowing for Plaintiffs to demonstrate rehabilitation so as to preserve their employment (Id.).[2] Defendant terminated a total of ten employees, nine of whom were African-American.

Plaintiffs bring claims for racial discrimination in violation of federal and state law, contending their terminations were based on state legislation that had a racially discriminatory impact (doc. 1). Defendant filed the instant motion to dismiss, contending Plaintiffs have failed to state a claim for which relief can be granted, essentially because it was merely complying with a state mandate (doc. 6). Plaintiffs have responded, and Defendant has replied (docs. 7, 8) such that this matter is ripe for

---

[1] In 1977, Plaintiff Gregory Waldon was found guilty of felonious assault and incarcerated for two years (doc. 1). Defendant's civil service office supported Waldon in proceedings before the Ohio Parole Board, indicating it would be happy to offer Waldon employment, which it did in early 1980 (Id.). Waldon worked for nearly thirty years for Defendant, most recently as a "systems monitor," with no contact with school children (Id.). Waldon's performance was excellent and of value to Defendant and to the public (Id.).

Plaintiff Eartha Britton was convicted in 1983 of acting as a go-between in the purchase and sale of $5.00 of marijuana (Id.). She worked for Defendant for eighteen years as an instructional assistant (Id.).

[2] However, after their termination the rule was amended so as to allow those in Plaintiffs' shoes to demonstrate rehabilitation. O.A.C. 3301-20-03. In fact, Plaintiffs were both eligible to apply for reemployment, but did not.

2

decision.

**II. Applicable Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, Twombly, Pleading Rules, and the Regulation of Court Access, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the

3

reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the

> concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

<u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 437 (6th Cir. 1988).

**III. Discussion**

Defendant contends the Court should dismiss Plaintiffs' Complaint because it simply followed Ohio law when it terminated Plaintiffs' employment (doc. 6). Defendant contends it maintained no particular employment practice that caused a disparate impact, and that it was a business necessity for it to follow Ohio law (<u>Id</u>.). Defendant further argues should this case proceed, it will be in the position of defending a criminal records policy it had no role in creating (<u>Id</u>.). Moreover, Defendant argues it had no way of knowing whether the facially-neutral criminal records requirement resulted in a statewide disparate impact (<u>Id</u>.). Finally, Defendant indicates its efforts in assisting Waldon with his release on parole some thirty years ago, shows it harbored no animus toward him, and that but for the state mandate, Waldon would not have been let go (<u>Id</u>.).

Plaintiffs respond that Title VII trumps state law, such that their terminations amount to "unlawful employment practices" based on disparate impact (doc. 7). Compliance with a state law, according to Plaintiffs, is no defense, because a violation is a violation (<u>Id</u>.). In Plaintiffs' view, whether Defendant was

5

complying in good faith to state law goes to the remedy the Court should ultimately craft, and not to whether the terminations were in violation of Title VII (Id.).

The parties devote substantial argument in their briefing as to the question of whether it is even possible to attack a facially-neutral policy based on a state mandate. In Defendant's view, Title VII does not require preemption of a facially neutral state law unless such law "purports" to discriminate (doc. 6, citing 42 U.S.C. § 2000e-7). Plaintiff responds that such interpretation ignores language regarding "the doing of any act. . .which would be an unlawful employment practice," and is inconsistent with the purposes of Title VII (Id. citing 42 U.S.C. § 2000h-4). Moreover, Plaintiff cites Ridinger v. General Motors Corp., 325 F.Supp. 1089 at 1094 (S.D. Ohio, 1971) in which the Court noted that Congress "intended to supersede all provisions of State law" which are inconsistent with Title VII.

The Supreme Court has recognized two distinct types of Title VII employment discrimination: "disparate treatment," and "disparate impact." Disparate treatment is not alleged in this matter, as it is based on proof of discriminatory motive. Plaintiffs do not contend Defendant intentionally fired them because of their race; Defendant indicates Plaintiffs were good employees and it only fired them due to the state mandate.

Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain

6

protected groups and which cannot be justified by business necessity. International Bhd. of Teamsters, 431 U.S. at 335-36 n. 15 (1977).  Unlike disparate treatment, disparate impact does not require a showing of discriminatory motive, since the claim is based on statistical evidence of systematic discrimination. Id. The classic example of such a claim arose in Griggs v. Duke Power Co., 401 U.S. 424 (1971), in which the Defendant required employees to have high school diplomas and pass intelligence tests as a condition of employment in or transfer to certain jobs.  Although the practice appeared neutral on its face, its effect was to freeze the status quo such that African-American employees were disqualified at a higher rate and the practice had no real relationship to successful job performance.

The Court finds no question that Plaintiffs have adequately plead a case of disparate impact.  Although there appears to be no question that Defendant did not intend to discriminate, intent is irrelevant and the practice that it implemented allegedly had a greater impact on African-Americans than others.  The Court rejects Defendant's view that the state law must "purport" to discriminate in order to be trumped by Title VII.  Such a view would gut the purpose of Title VII, and would run contrary to Griggs, as well as subsequent authorities in which state mandates were challenged. Palmer v. General Mills, 513 F.2d 1040 (6th Cir. 1975), Gulino v. New York State Educ. Dept., 460 F.3d 361, 380 (2d Cir. 2006).  Where, as alleged here, a facially-

7

neutral employment practice has a disparate impact, then Plaintiffs have alleged a prima facie case.

An employer may defend against a prima facie showing of disparate impact only by showing that the challenged practice is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(I). Plaintiff correctly signals that "business necessity" is a narrow concept, and that normally an employment practice must have a manifest relationship to the employment in question (doc. 7, citing Griggs, 401 U.S. 424, 431-432). However, here the employment practice did not seek to measure technical aptitude or ability but served as an ultimate bar to employment due to some prior unlawful act committed by the employees. Courts have viewed this sort of exclusion differently. Douglas El v. Southeastern Pennsylvania Transportation Authority, 479 F.3d 232, 242-45 (3d. Cir. 2007)(criminal conviction hiring policies concern the management of risk, a policy making distinctions among crimes upheld); Ahmed v. Kmart, Sears, No. 08-CV-10454, 2008 U.S. Dist. LEXIS 114937, fn.1 *6(E.D. Mich., October 2, 2008)(noting business necessity defense could apply to criminal conviction policy since it appears to distinguish between applicants that pose an unacceptable level of risk and those that do not); EEOC v. Carolina Freight Carriers Co., 723 F. Supp. 734 (S.D. Fla. 1989)(upholding policy barring those with prior theft records from truck driver position; decided under definition of "business necessity" abrogated by statute as

8

explained in Douglas El, 479 F.3d 232, 241); and Buck Green v. Missouri Pacific Railroad Co., 523 F.2d 1290 (8th Cir. 1975)(Defendant enjoined from using criminal convictions as an absolute bar to employment).

The Court finds instructive the analysis of the Eighth Circuit in Buck Green, 523 F.2d 1290, 1296. The Buck Green court examined the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), noting that the high court made a distinction between the Griggs sort of neutral testing requirements that had a disparate impact and the case where the applicant had engaged in a seriously disruptive act. Justice Powell's opinion for a unanimous court added a caveat to its holding with these words:

> Petitioner [McDonnell Douglas] does not seek his [Green's] exclusion on the basis of a testing device which overstates what is necessary for competent performance, or through some sweeping disqualification of all those with any past record of unlawful behavior, however remote, insubstantial, or unrelated to the applicants's personal qualifications as an employee. 411 U.S. at 806 (emphasis added).

The Buck Green decision perceived such comment "to suggest that a sweeping disqualification for employment resting on solely past behavior can violate Title VII where that employment practice has a disproportionate racial impact and rests upon a tenuous or insubstantial basis." 523 F.2d at 1296.

The Court finds the policy at issue in this case a close call. Obviously the policy as applied to serious recent crimes

9

addressed a level of risk the Defendant was justified in managing due to the nature of its employees' proximity to children. However, in relation to the two Plaintiffs in this case, the policy operated to bar employment when their offenses were remote in time, when Plaintiff Britton's offense was insubstantial, and when both had demonstrated decades of good performance. These Plaintiffs posed no obvious risk due to their past convictions, but rather, were valuable and respected employees, who merited a second chance. "To deny job opportunities to these individuals because of some conduct which may be remote in time or does not significantly bear upon the particular job requirements is an unnecessarily harsh and unjust burden." Buck Green, 523 F.2d at 1298.[3] Under these circumstances, the Court cannot conclude as a matter of law that Defendant's policy constituted a business necessity.

Moreover, the Court cannot conclude that Defendant was compelled to implement the policy, when it saw that nine of the ten it was terminating were African-American. As stated above, Title VII trumps state mandates, and Defendant could have raised questions with the state board of education regarding the stark disparity it confronted.

---

[3] The Court further notes that though the Equal Employment Opportunity Commission Guidelines are not entitled to great deference, Section 605 of its Compliance Manual addresses the issue of arrest and conviction records. It states that an applicant may be disqualified from a job based on a previous conviction only where the employer takes into consideration the nature of the job, the nature and the seriousness of the offense, and the length of time since it occurred.

10

**IV. Conclusion**

Having reviewed this matter, the Court concludes that Plaintiffs' Complaint raises plausible allegations of disparate impact discrimination. Defendant's implementation of the state mandate, as alleged, could very well amount to a violation of Title VII. Accordingly, the Court DENIES Defendant Cincinnati Public Schools' Motion to Dismiss (doc. 6).

SO ORDERED.

Dated: April 24, 2013          s/S. Arthur Spiegel
                                              S. Arthur Spiegel
                                              United States Senior District Judge