UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY WALDON, et al., | : | Case No. 1:12-cv-677 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CINCINNATI PUBLIC SCHOOLS, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 43) AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 44)**

This civil action is before the Court on the parties' cross-motions: 1) Defendant's Motion for Summary Judgment (Doc. 43), Plaintiffs' Response in Opposition (Doc. 51), and Defendant's Reply (Doc. 59); and 2) Plaintiffs' Motion for Partial Summary Judgment (Doc. 44), Defendant's Response (Doc. 52), and Plaintiffs' Reply (Doc. 58).

**I.  BACKGROUND FACTS**

Plaintiffs were both long-term and valued employees of Defendant Cincinnati Public Schools ("CPS").  In 2007, the Ohio Legislature passed a law requiring school districts across the state to conduct criminal background checks.  The new law required employees convicted of any of a number of specified crimes to be terminated, regardless of how remote in time or how little they related to the employees' qualifications.  In late 2008, Plaintiffs lost their employment pursuant to the law, based on criminal matters that

were decades old. Defendant terminated a total of ten of its employees, nine of whom were African-American.

Plaintiffs bring claims for racial discrimination in violation of federal and state law, contending their terminations were based on a state law that had a racially discriminatory impact. Defendant has moved for summary judgment, contending Plaintiffs have failed to show statistical proof of statewide impact of the criminal background check requirement and therefore have not shown the requirement resulted in a disparate impact (Doc. 43). Plaintiffs have also moved for summary judgment, contending nine of the ten employees discharged by CPS were African-American, and CPS has offered no business necessity justifying the use of the policy (Doc. 44). This matter is ripe for the Court's consideration.

## II. UNDISPUTED FACTS[1]

1. For many years, Ohio has required criminal background checks for licensed school-district employees.

2. In 2007, the Ohio Legislature enacted House Bill 190.

3. In September 2008, the Ohio Legislature enacted House Bill 428.

4. Among other things, this legislation amended Revised Code § 3319.39 and created Revised Code § 3319.391.

5. Ohio Revised Code § 3319.391 required that all public school districts, including Cincinnati Public Schools ("CPS"), obtain criminal background checks from all current school district employees—licensed and non-licensed—by September 5, 2008.

---

[1] *See* Doc. 45.

2

6. Employees who had previously been convicted of a number of enumerated offenses were to be terminated under the policy.

7. Plaintiffs Gregory Waldon and Eartha Britton were employed by CPS when this legislation was enacted.

8. In 1977, while an employee of CPS, Mr. Waldon was convicted of felonious assault in violation of Ohio Revised Code § 2903.11. CPS was aware of his conviction. In fact, the CPS civil service office corresponded with the Ohio Parole Board that CPS "would be happy to offer Mr. Waldon employment in the near future." Following Mr. Waldon's subsequent release in 1980, CPS rehired Mr. Waldon and continued to employ him until the enactment of Ohio Revised Code § 3319.391.

9. CPS planned to terminate Mr. Waldon under Ohio Revised Code §§ 3319.39 and 3319.391, and CPS officials informed Mr. Waldon of its intention to terminate his employment with CPS at a hearing held in November or early December 2008.

10. Mr. Waldon chose instead to retire for economic reasons.

11. In 1983, Ms. Britton was convicted of drug trafficking in violation of Ohio Revised Code § 2925.03. The violation was related to a $5.00 transaction involving marijuana. CPS was aware of this conviction when it hired Ms. Britton in 1980.

12. Ms. Britton's employment was terminated by CPS.

13. CPS applied Ohio Revised Code §§ 3319.39 and 3319.391 to Ms. Britton as written.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

### A. Disparate Impact Discrimination

The Supreme Court addressed the problem of disparate impact discrimination in its landmark decision, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). In *Griggs*, the Court explained that Title VII of the Civil Rights Act "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." 401 U.S. at 431. At issue in *Griggs* were requirements that employees have high school diplomas and pass intelligence tests as a condition of employment in or transfer to certain jobs. Although the practice appeared neutral on its face, its effect was to freeze the status quo such that African-American employees were disqualified at a higher rate while the requirements had no real relationship to successful job performance. The Court struck

down such practice, holding that any tests used must "measure the person for the job and not the person in the abstract." *Id.* at 436.

Disparate impact cases, therefore "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Lyon v. Ohio Educ. Ass'n*, 53 F.3d 135, 138 (6th Cir. 1995)(*quoting International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). A *prima facie* disparate impact case is established when: 1) plaintiff identifies a specific employment practice to be challenged; and 2) through relevant statistical analysis shows that the challenged practice has an adverse impact on a protected group. *Grant v. Metro Gov't of Nashville & Davidson Cty.*, 446 App'x 737, 740 (6th Cir. 2011). If the plaintiff meets this burden,

> the employer must show that the protocol in question has "a manifest relationship to the employment"—the so-called "business justification." *Griggs*, 401 U.S. 424, 432. If the employer succeeds, the plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect.

*Isabel v. City of Memphis*, 404 F.3d 404 at 411 (6th Cir. 2005). "An employer cannot be held liable for disparate impact if a legitimate business policy results in workforce disparities." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 579 (6th Cir. 2004).

### B.  The Parties' Arguments

#### 1.  Neutral State Mandates Do Not Escape Title VII

Defendant revisits the argument, which the Court rejected in its previous Order

on Defendant's motion to dismiss, that the challenged employment law must "purport" to discriminate in order to be preempted by Title VII. (Doc. 43, *citing* 42 U.S.C. § 2000e-7). Plaintiffs protest that the Court's prior holding is law of the case, and further argue that where a state law "purports" to authorize some employment practice that violates Title VII due to *either* disparate treatment *or* disparate impact, the state law is trumped by Title VII (Doc. 51).  Plaintiffs further argue that Title VII's provisions also authorize federal courts to invalidate any state or local law that "is inconsistent with any of the purposes" of Title VII. (*Id*. *citing* 42 U.S.C. § 2000h-4).

The Court finds Plaintiffs' position well taken that Defendant's view is inconsistent with the purpose of Title VII, and would eviscerate the well-established principles supporting the theory of disparate impact.  Grafting a requirement onto the *prima facie* disparate impact case that a law must purport to discriminate would result in laws withstanding challenge that are facially neutral but discriminatory in impact.  Such result would be contrary to *Griggs* and Title VII.  *See Guardians Ass'n of N.Y.C. Police Dep't. Inc. v. Civil Serv. Comm'n of the City of New York*, 630 F.2d 79, 104-05 (2d Cir. 1980)(Defendant cannot justify disparate impact job testing by contending it was complying with state law).

### 2. The *Prima Facie* Case of Disparate Discrimination

Plaintiffs have identified the specific practice challenged—the termination of employees with certain criminal convictions—and thus have met the first prong of their *prima facie* case for disparate impact discrimination.  *Grant*, 446 App'x 737, 740.   For

the second prong, Plaintiffs have proffered statistical analysis showing that while African-Americans comprise slightly more than 50% of Defendant's non-licensed employees, they comprised 100% of Defendant's non-licensed employees who lost their jobs due to the criminal background check policy (Doc. 44).

Defendant argues that Plaintiffs are focusing on the wrong group. In Defendant's view, Plaintiffs are wrong to focus solely on the subset of employees terminated by Defendant, but should instead proffer relevant statistical evidence of the effects of the policy state-wide, as Ohio Revised Code §§ 3319.39 and 3319.391 applied state-wide and not merely to CPS employees (Docs. 43, 52).

Plaintiffs contend, citing *Betsey v. Turtle Creek Assocs.,* 736 F.2d 983 (4th Cir. 1984) and *Graoch Assoc #33, L.P. v. Louisville/Jefferson Cnty.,* 508 F.3d 366, 378 (6th Cir 2007) (applying *Betsey*), that "[t]he correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied." *Betsey*, 736 F.2d at 987. According to Plaintiffs, "the total group at issue here is CPS's employee population" (Doc. 44). Defendant cites the same authority, contending the "total group" includes all public school employees in the state. (Doc. 59).

The parties further disagree as to the import of *Regner v. City of Chicago*, 789 F.2d 534 (7th Cir. 1986). In *Regner*, the Plaintiff was employed by a public library system and she challenged promotion practices at the main library which she alleged had a disparate impact on minorities. Defendant countered that Plaintiff should not look at the statistics for one library only, but rather the entire library system, which showed

7

minorities received a fair percentage of promotions. *Id*. The district court took Defendant's view, but the Seventh Circuit reversed, reasoning that the promotions awarded to minorities were clustered in branches, while the main library primarily promoted whites. *Id. at* 538. The policy at issue, therefore, was that at the main library, and not that which was functionally different system-wide. The appellate court therefore found insufficient the basis offered by the district court in granting summary judgment to the library system.

Here, the Court finds well-taken Defendant's position that the policy at issue was one that came from a state mandate, and, therefore, the onus is on Plaintiffs to show that the total group impacted statewide was disproportionally comprised of minorities. Plaintiffs' case is not one like *Regner*, in that there is no evidence that the criminal background check policy was handled any differently in Cincinnati than it was state-wide. Therefore, unlike *Regner*, it is appropriate to view the "total group" in order to examine whether the policy had a disproportionate impact. Plaintiffs, despite having done some discovery on the issue, have not proffered evidence showing state-wide disparate impact of the background check policy. Accordingly, Plaintiffs have failed to establish a *prima facie* case, and their claim fails as a matter of law.

As the Court has concluded Plaintiffs have failed to establish a *prima facie* case, it need not reach the balance of the parties' arguments regarding whether Defendants' policy was justified by a legitimate business interest. Finally, because Plaintiffs' federal claims fail, so does their state law claim under Ohio Revised Code § 4112. *Plumbers and*

8

*Steamfitters Jt. Apprenticeship Commt. v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192 (1981).

## V. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment (Doc. 44) is **DENIED**.

The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date: 2/3/15                                                                 *s/ Timothy S. Black*
                                                                             Timothy S. Black
                                                                             United States District Judge